1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                            EASTERN DISTRICT OF CALIFORNIA

10   JAMES WILSON, et al.,

11            Plaintiffs,                  No. CIV S-12-1413 KJM AC

12        v.

13   HOUSEHOLD FINANCE
     CORPORATION, et al.,                  ORDER
14
              Defendants.
15   _____/

16            On June 28, 2012, plaintiffs James Wilson, Pauline Wilson, and Pam Croysdil

17   (collectively "plaintiffs") filed a First Amended Complaint (FAC) against Household Finance

18   Corporation (Household) and Housekey Financial Corporation (Housekey) (collectively

19   defendants) alleging thirteen causes of action: (1) fraud in the origination of the loan;

20   (2) violation of California Code of Civil Procedure § 2923.5; (3) Real Estate Settlement

21   Procedures Act (RESPA) violation; (4) rescission; (5) predatory lending; (6) a claim titled

22   "Unfair and Deceptive Business Practices Act (UDAP)"; (7) breach of contract; (8) breach of

23   implied contract of good faith and fair dealing; (9) cancellation of instruments; (10) intentional

24   misrepresentation; (11) negligent misrepresentation; (12) quiet title; and (13) declaratory relief.

25   The complaint alleges generally that plaintiffs James and Pauline Wilson were misled during the

26   refinancing of their home and their efforts to forestall a pending foreclosure.

1    Defendants have moved to dismiss most of the causes of action in the First

2  Amended Complaint; the court submitted the motion without hearing.  After considering the

3  parties' arguments, the court hereby GRANTS the motion in part and DENIES it in part, as

4  explained below.

5  I.  STANDARDS FOR A MOTION TO DISMISS

6    Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a party may move to

7  dismiss a complaint for "failure to state a claim upon which relief can be granted."  A court may

8  dismiss "based on the lack of cognizable legal theory or the absence of sufficient facts alleged

9  under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir.

10  1990).  A  motion to dismiss under this rule may also challenge the sufficiency of fraud

11  allegations under the more particularized standard of Rule 9(b) of the Federal Rules of Civil

12  Procedure.  *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).

13    Although a complaint need contain only "a short and plain statement of the claim

14  showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), in order to survive a motion

15  to dismiss this short and plain statement "must contain sufficient factual matter . . . to 'state a

16  claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

17  (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A complaint must include

18  something more than "an unadorned, the-defendant-unlawfully-harmed-me accusation" or

19  "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action.'"  *Id.*

20  (quoting *Twombly*, 550 U.S. at 555).  Determining whether a complaint will survive a motion to

21  dismiss for failure to state a claim is a "context-specific task that requires the reviewing court to

22  draw on its judicial experience and common sense."  *Id.* at 679.  Ultimately, the inquiry focuses

23  on the interplay between the factual allegations of the complaint and the dispositive issues of law

24  in the action.  *See Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

25    In making this context-specific evaluation, this court must construe the complaint

26  in the light most favorable to the plaintiff and  accept as true the factual allegations of the

complaint.  *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007).  This rule does not apply to "'a legal conclusion couched as a factual allegation,'" *Papasan v. Allain*, 478 U.S. 265, 286 (1986) (quoted in *Twombly*, 550 U.S. at 555), nor to "allegations that contradict matters properly subject to judicial notice" or to material attached to or incorporated by reference into the complaint. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988-89 (9th Cir. 2001).  A court's consideration of documents attached to a complaint or incorporated by reference or matter of judicial notice will not convert a motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907-08 (9th Cir. 2003); *Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995); *compare Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002) (noting that even though court may look beyond pleadings on motion to dismiss, generally court is limited to face of the complaint on 12(b)(6) motion).

II. <u>ANALYSIS</u>

    A. <u>The Allegations of the First Amended Complaint</u>

        Plaintiffs allege that in 2006 James and Pauline Wilson, then each seventy-nine years old, sought to reduce their mortgage payments to stabilize payments in retirement and so contacted Household about refinancing their mortgage.  FAC ¶ 192.  An agent assured them he would fill out the loan application, but never asked them about their expenses or income and never asked for documentation of those figures.   FAC ¶¶ 23, 25.  Defendants thereafter qualified plaintiffs for a loan by falsely stating plaintiffs' income.  FAC ¶ 190.

        The agent told the Wilsons they qualified for an "excellent" thirty year loan at a reduced monthly payment, so plaintiffs proceeded with the loan process.   FAC ¶¶ 24, 187. Plaintiffs signed the loan documents in December 2006.  They were not given much time to read the documents, the tops of which were obscured, but they trusted the agent who said they qualified for an affordable loan commensurate with the value of the property and so signed the documents.  FAC ¶¶ 27-28, 30.   Based on the information they had provided the agent, however, he should have been aware they could not afford the loan they were offered.   FAC ¶¶ 54, 57.

At some point plaintiffs contacted Household in attempt to lower their monthly payments, but were told they could not receive any assistance because they were current on the loan.  FAC  ¶ 32.   An agent of Household told plaintiffs they had to be delinquent on the loan in order to qualify for assistance.  FAC ¶¶ 32-33.  Once they had fallen behind, they again contacted Household, but were denied any assistance even though they were originally assured the modification looked good.  FAC ¶¶ 33-34, 194.  Indeed, defendants asked plaintiff to fill out paperwork for a modification under the Home Affordable Modification Program (HAMP) but later told plaintiffs that defendants did not participate in HAMP.  FAC ¶ 214.   Defendants also led plaintiffs to believe they would suspend the foreclosure proceedings during the modification process.  Defendants never intended to modify the loan but rather sought to force plaintiffs into foreclosure and charge them excessive penalties and interest.   FAC ¶ 194.

It was not until November 2011, after the denial of the loan modification, when plaintiffs reviewed the loan qualifying summary, that they understood defendants' suppression of facts and deception.   FAC ¶ 60.  Only after meeting with counsel in April 2012 did they fully understand the terms of the forty-year loan and the fact that it exceeded the value of the property. FAC ¶¶ 29, 31, 49.

B.  Fraud Claims (First, Fourth, Tenth and Eleventh Causes of Action)

Defendants argue that any claims of fraud stemming from loan origination are barred by the statute of limitations and that the later claims of intentional and negligent misrepresentation based on the loan modification are not adequately pleaded.  Plaintiffs do not explicitly address the statute of limitations in their opposition, but do argue that "[a]fter finally receiving the loan documents after closing, Plaintiffs filed the documents away, having no cause to review the documents."  Opposition, ECF No. 14, at 4.[1]  They also allege they are entitled to /////

[1] The court refers to the pagination assigned by the court's ECF system.

1   rescind the loan because defendants misrepresented plaintiffs' income and understated their

2   expenses and failed to disclose the true purpose of the loan.   FAC ¶¶ 105-106.

3            In addition to the general pleading requirements of Rule 8, allegations of fraud

4   must meet heightened pleading standards.  Under Rule 9(b), a plaintiff who alleges fraud "must

5   state with particularity the circumstances constituting the fraud," but may "aver[] generally" the

6   state of mind animating the fraud.  The pleading must "'be specific enough to give defendants

7   notice of the particular misconduct . . . so that they can defend against the charge and not just

8   deny that they have done anything wrong.'"  *Sanford v. Memberworks, Inc*., 625 F.3d 550, 558

9   (9th Cir. 2010) (quoting *Kearns v. Ford Motor Co.,* 567 F.3d 1120, 1124 (9th Cir. 2009));

10  *Neubronner v. Milken*, 6 F.3d 666, 671-72 (9th Cir. 1993) ("A pleading is sufficient under Rule

11  9(b) if it identifies the circumstances constituting fraud so that the defendant can prepare an

12  adequate answer from the allegations." (internal quotation marks, citation omitted)); *Odom v.*

13  *Microsoft Corp*., 486 F.3d 541, 553 (9th Cir. 2007) (recognizing that "plaintiffs may aver

14  scienter generally, just as the rule states–that is, simply by saying that scienter existed") (internal

15  quotation marks and citation omitted).  To avoid dismissal, the complaint must describe the time,

16  place, and specific content of the false representations and identify the parties to the

17  misrepresentations.   *Kearns*, 567 F.3d at 1124.

18            i. <u>Statute of Limitations</u>

19            As provided by the California Code of Civil Procedure, a cause of action for fraud

20  must be brought within three years, although "[t]he cause of action in that case is not deemed to

21  have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud . . . ."

22  CAL. CIV. PROC. CODE § 338(d).  This discovery rule "postpones accrual of a cause of action

23  until the plaintiff discovers, or has reason to discover, the cause of action." *Norgart v. Upjohn*

24  *Co.,* 21 Cal. 4th 383, 397 (1999).  Under the rule, "[a] plaintiff need not be aware of the specific

25  'facts' necessary to establish the claim; that is a process contemplated by pretrial discovery.

26  Once the plaintiff has a suspicion of wrongdoing, and therefore an incentive to sue, she must

5

1  decide whether to file suit or sit on her rights. So long as a suspicion exists, it is clear that the

2  plaintiff must go find the facts; she cannot wait for the facts to find her." *Jolly v. Eli Lilly & Co.*,

3  44 Cal. 3d 1103, 1111 (1998).

4       To rely on a claim of delayed discovery, a plaintiff must allege facts showing that

5  the basis of the claim could not have been discovered earlier, even in the exercise of reasonable

6  diligence, and identifying how and when plaintiff discovered the fraud. *Briosos v. Wells Fargo*

7  *Bank*, No. C 10–02834 LB, 2011 WL 1740100, at *4 (N.D. Cal. May 5, 2011); *but see Bonds v.*

8  *Nicoletti Oil, Inc.*, No. CV-F-07-1600 OWW/DLB, 2008 WL 2233511, at *7–8 (E.D. Cal. May

9  28, 2008) (questioning whether California pleading standards apply, but finding it plaintiff's

10  burden to plead facts supporting delayed discovery). "Reasonable diligence requires the reading

11  of a contract before signing it." *Brookwood v. Bank of Am.*, 45 Cal. App. 4th 1667, 1674 (1996).

12   Moreover, even though "the law is solicitous of those who are particularly susceptible to fraud

13  due to their ignorance, age, or infirmity," such persons "are still expected to be prudent in their

14  business transactions."  *Alfaro v. Cmty. Hous. Improvement Sys. & Planning Ass'n*, 171 Cal.

15  App. 4th 1356, 1394 n.23 (2009).  Plaintiffs have not alleged that the agent affirmatively

16  misrepresented the contents of the loan documents or that plaintiffs were prevented from reading

17  them, only that they did not have much time to read them before signing.  Moreover, they do not

18  allege the documents were thereafter withheld from them; to the contrary it appears that they

19  "filed them away."  ECF No. 14 at 9. On these facts they cannot rely on delayed discovery.

20       In their fourth cause of action, plaintiffs allege they are entitled to rescind the loan

21  because of defendants' alleged misrepresentation of  plaintiffs' income and understatement of

22  their expenses to qualify them for a loan they could not afford.  FAC ¶ 105.  It is unclear whether

23  this is part of a Truth In Lending Act (TILA) cause of action, 15 U.S.C. § 1601, *et seq.*, or is a

24  separate claim.  The claim is regardless barred by the statute of limitations and plaintiffs have

25  not alleged delayed discovery, as there is nothing in the complaint suggesting they were

26  prevented from obtaining a copy of the application filled out in their names.

1     ii. <u>Sufficiency of the Allegations Concerning Loan Modification</u>

2    In California, a claim of fraud has five elements:  (1) the defendant made a false

3 representation as to a past or existing material fact; (2) the defendant knew the representation

4 was false at the time it was made; (3) in making the representation, the defendant intended to

5 deceive the plaintiff; (4) the plaintiff justifiably and reasonably relied on the representation; and

6 (5) the plaintiff suffered resulting damages.  *Lazar v. Superior Court,* 12 Cal. 4th 631, 638

7 (1996); *Ali v. Humana, Inc*., No. 12–cv–00509–AWI–GSA, 2010 WL 2376972, at *5 (E.D. Cal.

8 June 22, 2012).  The elements for a claim of negligent misrepresentation are (1) a

9 misrepresentation of a past or existing material fact, (2) without reasonable grounds for believing

10 it to be true, (3) with intent to induce another's reliance, (4) justifiable reliance by a party who

11 was ignorant of the truth, and (5) damage stemming from the reliance on the representation.

12 *B.L.M. v. Sabo & Deitsch*, 55 Cal. App. 4th 823, 834 (1997); *Continental Airlines, Inc. v.*

13 *McDonnell Douglas Corp*., 216 Cal. App. 3d 388, 402 (1989).  Liability for negligent

14 misrepresentation must flow from an assertion of material fact, not from an implied

15 representation or nondisclosure.  *Yanase v. Auto Club of So. Cal.*, 212 Cal. App. 3d 468, 473

16 (1989).  Courts in the Ninth Circuit have applied the standard to claims of intentional and

17 negligent misrepresentation, which in California are a species of fraud.  *Meridian Project Systs.,*

18 *Inc. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1219-20 (E.D. Cal. 2005); *Bily v. Arthur*

19 *Young & Co*., 3 Cal. 4th 370, 407 (1992) (negligent misrepresentation is a species of the tort of

20 deceit); *see generally Vess v. Ciba-Geigy Corp*., 317 F.3d 1097, 1104-05 (9th Cir. 2003); *but see*

21 *Petersen v. Allstate Idem. Co*., 281 F.R.D. 413, 417-18 (C.D. Cal. 2012) (questioning whether

22 the Rule 9(b) standard for fraud applies to negligent misrepresentation).

23    Defendants argue that the complaint is insufficient because it does not meet the

24 federal pleading standards for fraud.  They also urge that plaintiffs cannot bring a claim for

25 negligent misrepresentation because defendants did not owe them a fiduciary duty.  Plaintiffs

26 counter that under *Comm. on Children's Television, Inc. v. Gen. Foods Corp*., 35 Cal. 3d 197,

217 (1983), the pleading standards for fraud are relaxed because "defendant possesses full information concerning the facts of the controversy."  ECF No. 14 at 10.  Whatever the California standard, the standard for pleading fraud under Rule 9(b) is relaxed only as to those matters primarily  within the opposing party's knowledge; "[f]or example, in cases of corporate fraud, plaintiffs will not have personal knowledge of all of the underlying facts."  *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (citation omitted).   In this case, however, plaintiffs were participants in the conversations they cite as containing actionable misrepresentations.  They have not shown they are entitled to any relaxation of Rule 9(b)'s pleading standard.

        Whether or not Rule 9(b)'s particularity requirements apply to negligent misrepresentation, defendants argue the claim cannot be saved by amendment because they do not owe a duty of care to plaintiffs, a necessary element of negligence.  *Plastino v. Wells Fargo Bank*, 873 F. Supp. 2d 1179, 1190 (N.D. Cal. 2012) ("As with any negligence claim, the tort of negligent representation requires that Plaintiff allege a duty of care.");  *Eddy v. Sharp*, 199 Cal. App. 3d 858, 864 (1988) ("As is true of negligence, responsibility for negligent misrepresentation rests upon the existence of a legal duty, imposed by contract, statute or otherwise, owed by a defendant to an injured person.").   Under California law, there is no fiduciary relationship between a lender and a borrower when "the institution's involvement in the loan transaction does not exceed the scope of its conventional role as mere lender of money."  *Nymark v. Heart Fed. Savings & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991); *Rosal v. First Fed. Bank of California*,  671 F. Supp. 2d 1111, 1129 (N.D. Cal. 2009).

        Some courts have found that a lender does not step outside its usual role even when it solicits or accepts an application for a loan modification and so there is no negligence claim stemming from any mishandling of the application.  *Roussel v. Wells Fargo Bank*, No. C 12-04057 CRB, 2013 WL 146370, at *6 (N.D. Cal. Jan. 14, 2013).   Others recognize that the answer to the question is more nuanced: whether a lender owes a duty of care to a borrower

depends on a balancing of several factors, including the extent to which the transaction was intended to affect the plaintiff, the foreseeability of harm, plaintiff's injury, the connection between the injury and defendant's conduct, moral blame attaching to defendant's conduct, and the policy of preventing future harm.  *Jolley v. Chase Home Fin.*, 213 Cal. App. 4th 872, 901-02 (2013); *Newsom v. Countrywide Home Loans, Inc.*, No. C 09–5288 SBA, 2010 WL 4939795, at *5 (N.D. Cal. Nov. 30, 2010); *see also Osei v. Countrywide Home Loans*, 692 F. Supp. 2d 1240, 1249-50 & n.2 (E.D. Cal. 2010) (stating the test, but observing that it had not found "a single example of a case in which a lender was found to owe a duty of care sounding in negligence to a borrower").[2]  Plaintiffs will be given leave to amend their negligent misrepresentation claim, if they are able to do so in light of Federal Rule of Civil Procedure 11.

C. RESPA (Third Cause of Action)

Under 12 U.S.C. § 2605(e)(1)(A), "[i]f any servicer of a federally related mortgage loan receives a qualified written request [QWR] from the borrower . . . for information relating to the servicing of such loan, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . . unless the action requested is taken within such period."  After receiving a QWR, a servicer must either make "appropriate corrections in the account of the borrower" or, after conducting an investigation, explain why the servicer believes the borrower's account is correct or why information responsive to the request is not available and refer the borrower to a person who may provide assistance to the borrower. 12 U.S.C. § 2605(e)(2).  To state a RESPA claim for the failure to respond to a QWR, a party must allege that he was damaged as the result of the servicer's failure to respond.  *Lal v. Am. Home Servicing, Inc.*, 680 F. Supp. 2d 1218, 1223 (E.D. Cal. 2010).

---

[2]  This court has, on occasion in the past, cited *Nymark, supra,* in finding no duty of care. Upon further consideration, this approach has not fully acknowledged *Nymark*'s nuances and the limits of its holding.  *See, e.g.*, *Wadhwa v. Aurora Loan Servs., LLC.*, Civ. No. S–11–1784 KJM KJN (E.D. Cal. Mar. 8, 2012).

1   　　　　Plaintiffs argue they were harmed because they are unable to determine the

2   amount of penalties, fees and interest they were assessed, and have been damaged because the

3   fees continue to accrue.   FAC ¶ 94.  In *Urbano v. Bank of America*, No. 1:12-CV-00464 AWI

4   SMS, 2013 WL 359655 (E.D. Cal. Jan. 29, 2013), a case this court finds persuasive, the court

5   determined that the requirement that a plaintiff plead actual pecuniary damages as the result of a

6   failure to respond to a QWR is not satisfied by a claim that, as a result of the failure, penalties

7   continue to accrue.  *Id*. at *6-7.  The court noted that the claims, similar to those in this First

8   Amended Complaint, were wholly conclusory and did not explain how defendants' failure to

9   respond to a QWR resulted in pecuniary harm.

10   　　　　The court in *Urbano* also rejected the claim, made in the First Amended

11   Complaint in this case, that the defendants violated 12 U.S.C.  §2605(e)(3) by providing

12   information to consumer credit agencies during the sixty-day period when they were tasked with

13   investigating the QWR, finding the claim "wholly conclusory."  *Urbano v. Bank of America*,

14   2013 WL 359655, at *7.  The claim here, similarly conclusory, is dismissed with leave to amend.

15   　　　D. <u>TILA</u> (Fourth Cause of Action)

16   　　　　Plaintiffs allege they are entitled to rescind the loan because of incomplete

17   disclosures of the terms of the loan and based on their right to rescind the loan.

18   　　　　Under TILA, 15 U.S.C. §§ 1601, *et seq*., and its implementing regulations,

19   12 C.F.R. § 226.1, *et seq*., a lender must make certain disclosures to a borrower before the

20   consummation of a loan.  The disclosures must  include the finance charges, the annual

21   percentage rate, and the right to rescind the transaction.  15 U.S.C. § 1638(a)-(b); 12 C.F.R. §§

22   226.17(b), 226.23(b); *see Yamamoto v. Bank of New York*, 329 F.3d 1167, 1169 (9th Cir. 2003).

23   TILA provides causes of action for rescission and damages if the lender does not make the

24   required disclosures.

25   　　　　TILA allows for rescission of certain loans and for damages, so long as the

26   borrower acts within specified time periods.  Under 15 U.S.C. § 1635(f), if the lender fails to

provide notice of rescission rights, the usual three day period is extended to three years from the date of the consummation of the transaction.  Under 15 U.S.C. § 1640(e), if the borrower seeks damages from TILA violations, he must file his action within one year of the transaction. *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1163 (9th Cir. 2002) (rescission); *Edstrom v. Ndex West, LLC*, Civ. No. S–10–105 FCD/KJM, 2010 WL 4069482, at *3 (E.D. Cal. Oct. 18, 2010) (damages).

The Ninth Circuit has observed that "the failure to make the required disclosures occurred, if at all, at the time the loan documents were signed."  *Meyer v. Ameriquest Mortgage*, 342 F.3d 899, 902 (9th Cir. 2003); *see also King v. State of California*, 784 F.2d 910, 915 (9th Cir. 1986).  In this case, the loan documents were signed in 2006, rendering the TILA action untimely.  FAC ¶ 27.

Plaintiffs argue they are entitled to equitable tolling, based on their threadbare allegation that, as a result of defendants' concealment, they did not learn of the violations until much later.  The complaint alleges variously that plaintiffs learned of the violations in November 2011 when they reviewed documents, or May 2011 when they received notice of the trustee's sale.   FAC ¶¶ 60, 101.  Plaintiffs fail to acknowledge, however, that § 1635(f) is a statute of repose, not a statute of limitations, and as such is not subject to equitable tolling.  *Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 412 (1998) ("we . . . hold that § 1635(f) completely extinguishes the right of rescission at the end of the 3-year period"); *Lane v. Vitek Real Estate Industries Group*, 713 F. Supp. 2d 1092, 1099 (E.D. Cal. 2010).   Even assuming that plaintiffs' mortgage was subject to rescission, any TILA action comes too late.  *See Champlaie v. BAC Home Loans Servicing, LP*, 706 F. Supp. 2d 1029, 1042 (E.D. Cal. 2009) (stating that mortgages are not subject to rescission under TILA).

Equitable tolling does apply to TILA damages claims:  "To establish excusable delay, plaintiffs must show 'fraudulent conduct by the defendant[s] resulting in their concealment of the operative facts, [their] failure . . . to discover the operative facts that are the

1  basis of [their] cause of action within the limitations period, and [their] *due diligence . . . until*

2  *discovery of those facts.*'" *Edstrom v. Ndex West. LLC*, 2010 WL 4069482, at *3 (quoting *Fed.*

3  *Election Comm'n v. Williams*, 104 F.3d 237, 240-41 (9th Cir. 1996) (emphasis in original));

4  *Urbano v. Bank of America*, 2012 WL 2934154, at *7 (stating that a claim of equitable tolling

5  must be supported by facts explaining how defendants concealed the true facts and why plaintiffs

6  could not otherwise have discovered them during the limitations period).

7        Plaintiffs will be given leave to amend the damages portion of their TILA claim,

8  if they are able to do so in light of Federal Rule of Civil Procedure 11.

9        E.  <u>Cancellation Of Instruments And Quiet Title</u> (Claims Nine & Twelve)

10        Plaintiffs contend that the Notice of Default and the Notice of Trustee's Sale

11  should be cancelled because they were wrongfully recorded in that defendants did not comply

12  with the requirements of California Civil Code §§ 2923.5 and 2924(b).[3]  Specifically they allege

13  that because defendants "did not fulfill the substantive obligations imposed upon them . . . [¶] . . .

14  the Notice of Default should never have been recorded . . . ."  FAC ¶¶ 73, 74.  Plaintiffs also

15  seek to quiet title as of November 3, 2010, asking for a judicial declaration that title in 1134

16  Acacia Avenue, Sacramento, is vested in them and that defendants have no interest in the

17  property because defendants obtained the property through fraud and wrongful conduct and

18  "failed to adhere to strict statutory requirements to effectuate a sale."  FAC ¶¶ 220-223.

19        Defendants argue that these claims should be dismissed because plaintiffs have

20  not alleged an ability to tender.  Plaintiffs counter that there is no absolute rule that tender be

21  alleged, that it would be inequitable to allege tender, and that there is no requirement that tender

22  be alleged at the pleading stage.

23  /////

24

25      [3] Plaintiffs have brought a separate cause of action describing defendants' alleged failure
to comply with notice requirements of the California Civil Code; defendants have not challenged

26  this claim in the motion to dismiss.

      i.  <u>Cancellation of Instruments</u>

A plaintiff may bring an action to cancel a written instrument when "there is a reasonable apprehension that if left outstanding, it may cause serious injury to a person against whom it is void or voidable." CAL. CIV. CODE § 3412.   As defendants observe, plaintiffs seek to cancel the notices of default and of trustee's sale; defendants reason that as these are based on irregularities in the foreclosure process, plaintiffs must tender the full amount of their indebtedness, as they would be required to do were they challenging a completed foreclosure. Relying on *Storm v. America's Servicing Co.*, No. 09cv1206-IEG (JMA), 2009 WL 3756629 (S.D. Cal. Nov. 6, 2009), plaintiffs argue that tender is a matter of discretion left up to the court. This court does not agree that tender is a matter of discretion: when a foreclosure has occurred, a party must tender the amount of the indebtedness to challenge a voidable sale for irregularities in the sale procedure.  *Cedano v. Aurora Loan Servs. (In re Cedano)*, 470 B.R. 522, 529 (9th Cir. B.A.P. 2012); *Shuster v. BAC Home Loans Servicing, LP*, 211 Cal. App. 4th 505, 512 (2012).  A party is not prejudiced by an irregularity if he is unable to pay his reasonable indebtedness. *Fontenot v. Wells Fargo Bank N.A.*, 198 Cal. App. 4th 256 (2011); *Wadhwa v. Aurora Loan Serv. LLC*, Civ. No. S–11–1784 KJM KJN, 2011 WL 4566107, at *3 (E.D. Cal. Sep. 29, 2011).

There is an unresolved debate in the case law on the question whether a party must tender the full amount of the indebtedness when challenging a foreclosure that has not yet occurred.  *McGuire v. Recontrust Co., N.A.*, No. CIV S–11–2787 KJM–CKD, 2012 WL 4510675, at *3 (E.D. Cal. Sep. 30, 2012); *compare Alicea v. GE Money Bank*, No. C-09-00091 SBA, 2009 WL 2136969, at *3 (N.D. Cal. July 16, 2009) (stating that tender is required when "a foreclosure is either pending or "has taken place") *with Vissuet v. Indymac Mortg. Servs.*, No. 09-CV-2321-IEG (CAB), 2010 WL 1031013 (S.D. Cal. Mar. 19, 2010) (stating that the tender rule applies only when a plaintiff is attempting to set aside a foreclosure).   Without determining the question here, the court finds tender is not required under the facts of this case. Plaintiffs are not attempting to declare the power of sale completely void, but rather are alleging

1    that they did not receive the notice required by § 2923.5, which confers a right to be contacted so

2    as to explore alternatives to foreclosure.   The only remedy for a violation is a postponement of

3    the sale. *Mabry v. Superior Court*, 185 Cal. App. 4th 208, 222-23 (2010).   Accordingly, although

4    plaintiffs seek the cancellation of the instruments, they could receive only temporary relief from

5    foreclosure.  Because the cancellation would not prevent defendants from proceeding with the

6    foreclosure once the statutory requirements are met, tender is not required.  This claim survives

7    the motion to dismiss.

8                    ii.  Quiet Title

9            A plaintiff may bring an action "to establish title under adverse claims to real . . .

10   property . . . ."  CAL. CIV. PROC. CODE § 760.020(a); *Kelley v. Mortg. Elec. Registration Sys.*,

11   642 F. Supp. 2d 1048, 1057 (N.D. Cal. 2009).  "'It is settled in California that a mortgagor

12   cannot quiet his title against the mortgagee without paying the debt secured.'" *Urbano v. Bank of*

13   *America*, 2012 WL 2934145, at *14 (quoting *Shimpones v. Stickney*, 219 Cal. 637, 639 (1934));

14   *Aguilar v. Bocci*, 39 Cal. App. 3d 475, 477 (1974).   As plaintiffs have not alleged an ability to

15   tender, this claim will be dismissed with leave to amend, if plaintiffs are able to do so consonant

16   with Rule 11.

17          F.  UCL (Claim Five)

18          Plaintiffs allege that defendants engaged in predatory lending, marketed the loan

19   "on the basis of fraud, exaggeration, misrepresentation, and/or concealment," and engaged in a

20   pattern of deceptive conduct.  FAC ¶¶ 112, 122, 125, 130.  They allege they "did not discover

21   the fraudulent acts (i.e., inflated income) used by Defendants to qualify them for the Loan until

22   November 2011 when Plaintiffs reviewed the original loan documents with their attorneys."

23   FAC ¶ 131.  When plaintiffs contacted Household about a loan modification, they were told they

24   could not qualify for a modification unless they were behind on their payments and so they

25   defaulted "as instructed by HFC."  FAC ¶ 133.  After submitting documents for a loan

26   modification, defendants said they did not participate in the government's HAMP program.

1    FAC ¶ 133.  Thereafter defendants pursued foreclosure without complying with California Civil

2    Code § 2923.5.  FAC ¶ 135.

3             Defendants argue that the UCL claims, which are based "almost entirely" on the

4    alleged misrepresentations surrounding the loan origination, are barred by the statute of

5    limitations and also do not state a claim.  Plaintiffs do not address the statute of limitations

6    argument in opposition, but contend instead that the claim has been adequately pleaded.

7           i.  <u>Statute of Limitations</u>

8             The statute of limitations for an action under California Business and Professions

9    Code §17200 is four years.  *Cortez v. Purolator Air Filtrations Prod. Co.*, 23 Cal. 4th 163, 178

10   (2000); CAL. CIV. CODE § 17208.  The Ninth Circuit has held that claims under the UCL begin to

11   run on the date of the violation and not the date of discovery.  *Karl Storz Endoscopy-Am., Inc. v.*

12   *Surgical Tech., Inc.*, 285 F.3d 848, 857 (9th Cir. 2002).  Recently, however, the California

13   Supreme Court held that the claims under the UCL are "governed by common law accrual

14   rules," including delayed discovery.  *Aryeh v. Canon Bus. Solutions, Inc.*, 55 Cal. 4th 1185, 1196

15   (2013).  The Ninth Circuit's interpretation of California law is "'binding in the absence of any

16   subsequent indication from the California courts that our interpretation was incorrect,'" *Jones-*

17   *Hamilton Co. v. Beazer Materials & Servs., Inc.*, 973 F.2d 688, 696 n.4 (9th Cir. 1992) (quoting

18   *Owen v. United States*, 713 F.2d 1461, 1464 (9th Cir. 1983)); in this case, the *Aryeh* decision is a

19   clear indication that the Ninth Circuit was incorrect in resolving this issue relating to the statute

20   of limitations for UCL claims.

21             In the First Amended Complaint, plaintiffs suggest they are entitled to rely on the

22   delayed discovery rule.  FAC ¶ 131.  A party is deemed to have discovered the fraud when it

23   "'has reason at least to suspect the factual basis for its elements.'" *Fox v. Ethicon Endo-Surgery,*

24   *Inc.*, 35 Cal. 4th 797, 807 (2005) (quoting *Norgart v. The Upjohn Co.*, 21 Cal. 4th 383, 398

25   (1999)).  As noted above, plaintiffs had copies of the documents relating to their loan but did not

26   examine them until 2011.  The loan document attached as an exhibit to plaintiffs' complaint

1    shows the term, payments on and total cost of the loan, the finance charge, and the requirement

2    to maintain homeowners' insurance on the property.  ECF No. 11 at 60.  That plaintiffs may not

3    have been prudent in their business dealings does not show they may rely on the delayed

4    discovery rule.  The UCL claims stemming from the loan origination are barred by the statute of

5    limitations.

6         To the extent that the UCL claims are based on alleged misrepresentations during

7    the loan modification process, they are timely.

8         ii.  <u>Failure to State a Claim</u>

9         "To bring a UCL claim, a plaintiff must show either an (1) unlawful, unfair, or

10   fraudulent business act or practice, or (2) unfair, deceptive, untrue or misleading advertising."

11   *Lippit v. Raymond James Fin. Servs., Inc.*, 340 F.3d 1033, 1043 (9th Cir. 2003) (internal

12   quotations omitted); *Gardner v. Am. Home Mortg. Servicing, Inc.*, 691 F. Supp. 2d 1192, 1201

13   (E.D. Cal. 2010).

14        Because the statute is phrased in the disjunctive, a practice may be unfair or

15   deceptive even if is not unlawful, or vice versa.  *Lippit*, 340 F.3d at 1043.  An action is unlawful

16   under the UCL and independently actionable if it constitutes a violation of another law.  *Farmers*

17   *Ins. Exch. v. Superior Court*, 2 Cal. 4th 377, 383 (1992); *Gardner*, 691 F. Supp. 2d at 1201.   An

18   act is "unfair" under the UCL if it "significantly threatens or harms competition, even if it is not

19   specifically proscribed by another law."  *Cell-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel.*

20   *Co.,* 20 Cal. 4th 163, 180, 187 (1999); *Swanson v. E.C. Mortg. Corp.*, No. CV F 09-1507 LJO/

21   DLB, 2009 WL 4884245, at *9 (E.D. Cal. Dec. 9, 2009).  Finally, an action is fraudulent under

22   the UCL if it deceives some member of the public or harms the public interest.  *Patacsil v.*

23   *Wilshire Credit Corp.*, No. 2:09-cv-01660 MCE KJM, 2010 WL 500466, at *6 (E.D. Cal. Feb. 8,

24   2010).

25        Plaintiffs' opposition discusses why the loan origination claims fall within the

26   UCL, but say nothing about their loan-modification related claims.  *See* ECF No. 14 at 13-14.

These claims appear to be fraud based: Plaintiffs claim that Household falsely told them they would be eligible for loan modification if they were in default when in fact Household had no intention of modifying the loan.  Because these claims are grounded in fraud, they must meet the heightened pleading standards of Rule 9(b) discussed above.  *See* page 5 *supra*; *Cullen v. Netflix, Inc.*, 880 F. Supp. 2d 1017, 1025 (N.D. Cal. 2012).  Because plaintiffs' claims do not meet this standard, they will be dismissed with leave to amend.

G.  UDAP (Sixth Claim)

Plaintiffs allege that defendants failed to undertake a diligent underwriting process during the loan origination because they failed to consider whether plaintiffs could meet the terms of their loan, as they were required to do by California Civil Code § 1920(a).  FAC ¶¶ 143-144, 148-49.  They also alleged that defendants failed to comply with California Civil Code § 2923.5 before undertaking the foreclosure process.   FAC ¶ 152.

Plaintiffs label their sixth claim as "Unfair and Deceptive Business Act Practices."  ECF No. 11 at 29.  They do not identify a California statute prohibiting unfair and deceptive business practices; defendants treat this as another UCL claim.  The court has found no cases identifying a statutory or common law basis for this claim in California.  As plaintiffs have not provided any basis for their claim, it will be dismissed with leave to amend if possible.  *See Teaupa v. U.S. Nat'l Bank N.A.*, 836 F. Supp. 2d 1083, 1102 (D. Haw. 2011) (dismissing a claim of predatory lending because the court and defendant "are left to guess whether this cause of action is based on an alleged violation of federal law, state law, common law or some combination") (internal citation, quotation marks omitted)).

H.  Breach of Contract (Seventh Claim)

Plaintiffs contend that they became delinquent on their mortgage in reliance on Household's statement that they were not eligible for loan modification because they were current on their mortgage; then Household rejected plaintiffs' request for modification or other assistance even though plaintiffs had submitted and resubmitted documents.  In addition,

17

defendant Household told plaintiffs they would not proceed with a foreclosure while their application for a loan modification was pending, but before plaintiffs had received the results of the loan modification review, Household directed Housekey to proceed with the foreclosure sale. Defendants thus breached their oral agreement.  FAC ¶¶ 158-162.

Defendants argue that this claim is barred by the statute of frauds and that plaintiffs have not alleged a sufficiently definite offer to postpone the foreclosure sale.  Plaintiffs counter that the oral agreement to postpone the foreclosure pending loan modification does not violate the statute of frauds because the agreement was independent of the original deed of trust.

i.  Statute of Frauds

Under California's Statute of Frauds, an "agreement by a purchaser of real property to pay an indebtedness secured by mortgage or deed of trust upon the property purchased . . . ." is invalid unless it is reduced to writing.  CAL. CIV. CODE § 1624(a)(6).  In *Secrest v. Security Nat'l Mortg. Loan Trust 2002-2* (*Secrest*), a California Court of Appeal held that "an agreement by which a lender agreed to forbear from exercising the right of foreclosure under a deed of trust securing an interest in real property comes within the statute of frauds." 167 Cal. App. 4th 544, 547 (2008).  The court explained that even though a forbearance agreement does not create, renew or extend the note or deed of trust, it can modify the terms by substituting a different payment or altering the lender's right to foreclose under the note and deed of trust.  *Id.* at 553.  And because "[a]n agreement to modify a contract that is subject to the statute of frauds is also subject to the statute of frauds," the oral forbearance agreement at issue was unenforceable.  *Id.* at 553; *see also Karlsen v. Am. Savings & Loan Ass'n*, 15 Cal. App. 3d 112, 121 (1971) ("An agreement to postpone a valid sale of property beyond the date when said property may be sold under and according to the terms of the trust deed obviously is an agreement to alter the terms of the instrument . . . ." (internal citation, quotation marks omitted)).

There is an exception to the statute of frauds: The California Civil Code also provides that "[a] contract in writing may be modified by an oral agreement to the extent that the

oral agreement is executed by the parties" and "a contract in writing may be modified by an oral

agreement supported by new consideration."   CAL. CIV. CODE § 1698(b), (c).  The California

Supreme Court has held that "if there exists sufficient consideration for an oral modification

agreement, then full performance by the promisee alone would suffice to render the agreement

'executed' within the meaning of section 1698. . . . In the absence of consideration, a gratuitous

oral promise to postpone a sale of property pursuant to the terms of a trust deed ordinarily would

be unenforceable under section 1698."  *Raedeke v. Gibraltar Sav. and Loan Ass'n.*, 10 Cal. 3d

665, 673 (1974).   In *Raedeke*, the plaintiffs' alleged procurement of a prospective purchaser for

the property subject to defendant's deed of trust was deemed "good consideration" for the

promise to postpone the sale, because plaintiff was not required to find a new purchaser as part

of the original bargain with the lender, "and constituted both detriment to plaintiffs (through the

expenditure of time and energy negotiating with possible purchasers) and benefit to Gibraltar

(through the potential substitution of a solvent purchaser in place of plaintiffs, rendering

foreclosure unnecessary).  Such detriment and benefit each would constitute 'good consideration

for a promise' in this state."  *Id.* at 673-74.  The court recognized, however, that if a creditor

promised to extend time for payment, the promise is not enforceable if the only consideration is

the debtor's payment of his overdue debt or the debtor's promise to pay his debt by the end of

the extended period.  *Id.* at 674 n.3.

      Here, plaintiffs' continued "stewardship" of the property is not sufficient

consideration, as they are required to act as stewards under the original loan agreement.  *See*

ECF No. 11 at 54 (stating that "Borrower shall keep the Property in good repair and shall not

commit waste or permit impairment or deterioration of the Property. . . .").  However, plaintiffs

supplied financial documents as part of the loan modification process and "fully complied with

all requests made by HFC with regard to submitting documentation for a loan modification."

FAC ¶ 162.  In *Vissuet v. Indymac Mortg. Servs.*, 2010 WL 1031013, at *4 the court found the

"completion and submission of the loan modification application" to be sufficient consideration,

1   in that it was not required under the terms of the original contract. *See also Ansanelli v. JP*

2   *Morgan Chase Bank NA*, No. C 10-03892 WHA, 2011 WL 1134451, at *4 (N.D. Cal. Mar. 28,

3   2011) (stating that plaintiffs' expenditure of time and energy in making new financial disclosure

4   was sufficient consideration for promise to postpone sale).  Defendants suggest that plaintiffs

5   submitted the new materials in seeking a loan modification, so this cannot serve as consideration

6   for Household's promise to postpone the sale.  Construing the complaint in the light most

7   favorable to plaintiffs, however, the court finds plaintiffs have alleged a sufficient connection

8   between complying "with all requests" by Household in connection with the modification

9   process and the promise to delay the foreclosure.

10          ii.  The Nature of the Offer

11          "'A cause of action for damages for breach of contract is comprised of the

12   following elements: (1) the contract, (2) plaintiff's performance or excuse for nonperformance,

13   (3) defendant's breach, and (4) the resulting damages to plaintiff.'"  *Durell v. Sharp Healthcare*,

14   183 Cal. App. 4th 1350, 1367 (2010) (quoting *Careau & Co. v. Sec. Pacific Bus. Credit, Inc.*,

15   222 Cal. App. 3d 1371, 1388 (1990) (emphasis omitted)).  A contract is not formed if the terms

16   are not "sufficiently definite" so that "the performance promised is reasonably certain."

17   *Weddington Prod., Inc. v. Flick*, 60 Cal. App. 4th 793, 811 (1998); Cal. Civ. Code § 3390

18   (stating that an agreement will not be enforced if the terms are not sufficiently certain "to make

19   the precise act which is to be done clearly ascertainable").

20          Defendants rely on *Dooms v. Fed. Home Loan Mortg. Corp.*, No. CV F 11–0352

21   LJO DLB, 2011 WL 1303272 (E.D. Cal. Mar. 31, 2011), to argue that lender's assurances

22   concerning foreclosure during modification were not sufficiently definite to support a finding

23   that a contract existed.  In that case, the court found no breach of the implied covenant of fair

24   dealing because the lender's letter telling plaintiff she had until a certain date to submit material

25   in support of her modification request was not a sufficient contractual promise.  *Id*. at *7.  In this

26   case, however, plaintiffs have alleged that defendants promised they would not pursue

foreclosure during the modification process, a sufficiently definite promise to support a contract. The motion to dismiss this claim is denied.

### I. Breach of Implied Covenant Of Fair Dealing (Eighth Claim)

Plaintiffs allege that defendants breached the implied covenant of good faith and fair dealing by their failures to disclose vital information during the loan origination process, by persuading plaintiffs to default to secure a loan modification, and by undertaking foreclosure during the modification process.

Defendants argue that to the extent this claim is based on circumstances surrounding the loan origination, it is barred by the statute of limitations and otherwise fails as there was no enforceable contract surrounding the loan modification.  Plaintiffs do not address the statute of limitations

#### i. Statute of Limitations

The statute of limitations for breach of the implied covenant is four years.  *Ladd v. Warner Bros. Entertainment, Inc*., 184 Cal. App. 4th 1298, 1309 n.7 (2010).   Any claim stemming from the loan origination is thereby barred, as discussed above.

#### ii. Failure to State A Claim

To state a claim for breach of the covenant of good faith and fair dealing, a plaintiff must allege: "(1) the plaintiff and the defendant entered into a contract; (2) the plaintiff did all or substantially all of the things that the contract require him to do or that he was excused from having to do; (3) all conditions required for the defendant's performance had occurred; (4) the defendant unfairly interfered with the plaintiff's right to receive the benefits of the contract; and (5) the defendant's conduct harmed the plaintiff." *Melegrito v. CitiMortgage Inc*., No. C 11–01765 LB, 2011 WL 2197534, at *10 (N.D. Cal. Jun.6, 2011).  "'[T]he implied covenant [of good faith and fair dealing] operates to protect the express covenants or promises of [a] contract.  In essence, the covenant is implied as a supplement to the express contractual covenants, to prevent a contracting party from engaging in conduct which . . . frustrates the other

party's rights to the benefits of the contract." *McClain v. Octagon Plaza*, LLC, 159 Cal. App. 4th 784, 806 (2008) (internal citations, quotation marks omitted); *Pica v. Wachovia Mortg.*, No. 2:09–cv–02372–GEB–KJN, 2010 WL 1525069, at *10 (E.D. Cal. Apr. 15, 2010).  Plaintiffs have not alleged that any contract arose from defendants' remark that no loan modification was possible because plaintiffs were current on their loan.  The motion to dismiss this portion of the complaint is granted.  However, plaintiffs have sufficiently identified an oral contract regarding the modification process and identified the breach giving rise to the violation of the implied covenant.  As defendants have raised no other argument concerning the sufficiency of this claim, the motion to dismiss this portion of the claim is denied.

      J.  <u>Declaratory Relief</u> (Thirteenth Cause of Action)

      Plaintiffs allege that defendants have wrongfully initiated a foreclosure and seek relief from this harm.

      Defendants argue that plaintiffs' claim for declaratory relief is not sufficiently defined and so must be dismissed in light of the insufficiency of the complaint.

      "A claim for declaratory relief is unnecessary where an adequate remedy exists under some other cause of action." *Magindin v. Washington Mutual Bank*, 637 F. Supp. 2d 700, 707 (N.D. Cal. 2009).  As the relief plaintiffs seek through this cause of action is the same as the relief sought generally, this claim is dismissed as such.  Plaintiffs may if appropriate include a request for declaratory relief in their prayer for relief in any amended complaint.

      IT IS THEREFORE ORDERED that:

      1.  Defendants' motion to dismiss, ECF No. 13, is granted in part and denied in part; and

      2.  Plaintiffs' amended complaint is due within twenty-one days of the date of this order.

DATED:  March 27, 2013.

UNITED STATES DISTRICT JUDGE